IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:18-cv-01483-SKC

CORINE GALLEGOS,

    Plaintiff,

v.

NANCY A. BERRYHILL, *Acting Commissioner of Social Security*,

    Defendant.

## OPINION AND ORDER

This action is before the Court under Title II of the Social Security Act, 42 U.S.C. § 401 et. seq., for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying Corine Gallegos' ("Plaintiff") application for Disability Insurance Benefits ("DIB"). The parties have consented to the Magistrate Judge's jurisdiction. [#14.][1] The Court has carefully considered the Complaint [#1], Plaintiff's Opening Brief [#16], Defendant's Response Brief [#17], Plaintiff's Reply Brief [#18], the social security administrative record ("AR") [#12], and applicable law. No hearing is necessary. For the following reasons, the Court PARTIALLY AFFIRMS the Commissioner's final decision and PARTIALLY REVERSES and REMANDS the final decision for additional proceedings.

---

[1] The Court uses "[#__]" to refer to specific docket entries in CM/ECF. References to "[AR at __]" are to documents within the administrative record.

1

## A. BACKGROUND

Plaintiff applied for DIB on March 5, 2015, alleging she became disabled beginning November 20, 2014. The claim was denied on May 27, 2015. She then filed a written request for a hearing. An administrative hearing was held on April 26, 2017. The Administrative Law Judge, Earl W. Shaffer ("ALJ"), found Plaintiff not disabled in a decision dated June 21, 2017 (the "Decision").

Plaintiff appealed the Decision to the Appeals Council, which denied the appeal. The Decision of the ALJ thus became the final decision of the Commissioner ("Final Decision"). 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff timely filed this action on June 14, 2018. [#1.] The Court has jurisdiction to review the Final Decision under 42 U.S.C. § 405(g).

## B. DIB FRAMEWORK

A person is disabled within the meaning of the Social Security Act "only if his physical and/or mental impairments preclude him from performing both his previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-CV-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (citing 42 U.S.C. § 423(d)(2).) "The mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Id.* "[F]inding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and

that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Fritz v. Colvin*, 15-cv-00230-JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (emphasis original) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Social Security Regulations outline a five-step process to determine whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*Wilson*, 2011 WL 9234, at *2 (citing 20 C.F.R. § 404.1520(b)–(f)); *see also* 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). Impairments that meet a "listing" under the Commissioner's regulations (20 C.F.R. § Pts. 404 and 416, Subpt. P, App. 1) and a duration requirement are deemed disabling at step three with no need to proceed further in the five-step analysis. 20 C.F.R. § 416.920(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision

and we do not go on to the next step"). Between the third and fourth steps, the ALJ must assess the claimant's residual functional capacity ("RFC"). *Id.* § 416.920(e). The claimant has the burden of proof in steps one through four. The Commissioner bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The ALJ followed the five-step process. [AR at 15-26.] He determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. [AR at 17.] At step one, he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 20, 2014. [*Id.*] At step two, he found that Plaintiff had three severe impairments: (1) bipolar disorder; (2) anxiety; and (3) cannabis abuse. [*Id.*][2] At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment. [*Id.* at 18.] He then found she had an RFC

> to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can perform work at the semiskilled level, but not greater than at the lower level at semi-skilled work. The claimant has moderate limits in socially interacting with coworkers, the general public, and supervisors. The claimant has moderate limitations in the ability for concentration, persistence, or pace. Moderate is defined as functioning in this area independently, appropriate and on a sustained basis is considered fair. Fair is defined as sufficient, not ample, but adequate. Ample is described as more than adequate. Adequate is defined as sufficient for a specific requirement.

[AR at 19.]

In finding this RFC, the ALJ considered all the evidence of record, to include the limitations and restrictions imposed by the combined effects of Plaintiff's medically

---

[2] He also found Plaintiff had physical impairments including hypertension and obesity. [AR at 17.] He determined these impairments were "nonsevere." [*Id.* at 18] He considered them within the residual functional capacity and assigned a "medium exertional residual functional capacity with mental limitations . . .." [*Id.* at 18.]

determinable impairments; all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529; opinion evidence in accord with 20 C.F.R. § 404.1527; Plaintiff's hearing testimony; testimony of Kristy Farnsworth, Ph.D. (an impartial medical expert); and testimony of Daniel B. Best (an impartial vocational expert). [AR at 15, 20-24.] The ALJ explained the relative weights he gave to each of the opinions he considered, and why. [*Id.*]

At steps four and five, the ALJ found Plaintiff was able to perform past relevant work as a phlebotomist and that this work did not require the performance of work-related activities that were precluded by her RFC. [AR at 24.] He further determined that Plaintiff could perform three additional jobs in the national economy considering her age, education, work experience and RFC: (1) housekeeping cleaner; (2) medical cleaner; and (3) small product assembler II. [*Id.* at 25-26.] The ALJ thus found Plaintiff was not under a disability at any time from November 20, 2014 (alleged onset date) through June 21, 2017 (the date of the Decision). [AR at 26.]

### C. STANDARD OF REVIEW

In reviewing the Commissioner's Final Decision, the Court's

> review is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance.

*Lee v. Berryhill*, 690 F. App'x 589, 590 (10th Cir. 2017) (internal quotation marks and citations omitted, citing *inter alia Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th

5

Cir. 2014)). *See also* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").

A court may not reverse an ALJ just because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing the ALJ's decision was justified. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "We review only the sufficiency of the evidence, not its weight . . . . Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views." *Lee*, 690 F. App'x at 591-92. Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

### D. ANALYSIS

Plaintiff raises two issues over the Final Decision: (1) "[t]he ALJ had no reason for failing to follow Dr. Suyeishi's mental limitations;" and (2) "[t]he ALJ did not have valid reasons for rejecting Dr. Nizami's opinion of mental limitations." [#16 at p.3.]

**1. The ALJ's Treatment of Dr. Suyeishi's Opinions**

Dr. Suyeishi was the state agency psychological consultant. He completed a mental residual functional capacity assessment dated May 22, 2015. [AR at 68-69.] He answered "yes" to the question: "Does the individual have social interaction limitations?" [*Id.* at 69.] He rated Plaintiff "moderately limited" in her "ability to interact appropriately with the general public" and "ability to accept instructions and respond appropriately to criticism from supervisors." [*Id.*] He rated her "not significantly limited" in her "ability to ask simple questions or request assistance," "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." [*Id.*] He also indicated that Plaintiff has no adaptation limitations. [*Id.*] He further opined:

> The [claimant] retains mental ability to do work not involving significant complexity or judgment; can do work requiring up to 3 months (sic) time to learn techniques, acquire information and develop facility needed for an average job performance; <u>cannot work closely</u> with supervisors or coworkers; can accept supervision and relate to coworkers <u>if contact is not frequent or prolonged</u>; must have <u>minimal to no inter-action</u> with the general public.

[*Id.* (emphasis added).] The ALJ gave Dr. Suyeishi's opinions "great weight" and he "adopted such opinions for the residual functional capacity." [AR at 22.]

Plaintiff argues the ALJ failed to follow Dr. Suyeishi's mental limitations despite adopting those opinions and assigning them "great weight." According to Plaintiff, "[i]n its simplest form, the error is that the ALJ said he gave great weight to Dr. Suyeishi's opinion but nevertheless failed to adopt his social impairments and failed to explain a valid reason

7

for deviating from them. . . . The ALJ failed to identify a single weakness in Dr. Suyeishi's opinion that would warrant any discounting of his restrictions." [#18 at p.4.] Plaintiff's primary argument is that the RFC fails to account for Dr. Suyeishi's opinions that Plaintiff should avoid "frequent or prolonged" contact with supervisors or coworkers and must have "minimal to no interaction with the general public." The Court partially agrees with Plaintiff.

Dr. Suyeishi's opinions have two critical components relevant to this appeal: (1) his opinion that Plaintiff can accept supervision and relate to coworkers if her contact with them is "not frequent or prolonged;" and (2) his opinion that Plaintiff must have "minimal to no interaction" with the general public. [AR at 69.] The Court finds the former opinion is accounted for in the RFC, but the latter is not.

An ALJ is not required to repeat moderate limitations in an RFC, but rather, may incorporate those limitations with the restrictions placed on the claimant's work activity. *McGregor v. Saul*, No. CIV-19-496-SM, 2019 WL 7116110, at *3 (W.D. Okla. Dec. 23, 2019). "This approach is acceptable in [this] circuit, for [the Tenth Circuit has] held in a published opinion that an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he [ALJ] accounted for [the claimant's] moderate concentration, persistence, and pace problems in his [RFC] by limiting [the claimant] to unskilled work.").)

For example, in *Lee*, the Tenth Circuit determined an ALJ did not err by failing to include certain moderate limitations assessed by an expert whose opinions the ALJ gave

8

great weight. *Lee v. Colvin*, 631 F. App'x 538, 541-42 (10th Cir. 2015). This was because the RFC reflected those moderate limitations were incorporated therein. *Id.* Similarly, In *Smith*, the Tenth Circuit found that the RFC incorporated the claimant's moderate nonexertional impairments as determined by an evaluating physician, even though the RFC did not specifically reference those impairments. *Smith v. Colvin*, 821 F.3d 1264, 1268-69 (10th Cir. 2016).

The ALJ in the instant case did the same. Plaintiff argues that the RFC fails to account for Dr. Suyeishi's "prohibition of frequent contact with supervisors and coworkers." But the RFC specifies that Plaintiff has "moderate limits in socially interacting with coworkers . . . and supervisors." It then defines moderate "as functioning in this area independently, appropriate and on a sustained basis is considered fair." *See* 20 C.F.R. Pt. 404, subpart P, app. 1(F). The Court finds that these functional limitations contained in the RFC fairly incorporate Dr. Suyeishi's opinion that Plaintiff "can accept supervision and relate to coworkers if contact is not frequent or prolonged." Substantial evidence in the record, including the opinions of Dr. Suyeishi, supports this RFC limitation—Dr. Suyeishi rated Plaintiff as "moderately limited" in "ability to accept instructions and respond appropriately to criticism from supervisors," and "not significantly limited" in her "ability to ask simple questions or request assistance," "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "ability to maintain socially appropriate behavior . . . ." [AR at 69.]

The same cannot be said for the ALJ's treatment of Dr. Suyeishi's opinion that Plaintiff "must have minimal to no interaction with the general public." Although Dr.

9

Suyeishi rated Plaintiff as "moderately limited" in her "ability to interact appropriately with the general public," he specified that her interactions with the general public must be minimal to none.³ [AR at 69.] This opinion is not reflected in the RFC, which merely provides that "[t]he claimant has moderate limits in socially interacting with . . . the general public . . . ." [AR at 19-20.]. Because the ALJ gave Dr. Suyeishi's opinions "great weight" and indeed "adopted" them, his failure to either include this limitation or discuss the reasons for its exclusion is error. *See Martinez v. Astrue*, 422 F. App'x 719, 724 (10th Cir. 2011) ("The error lies not in how the ALJ weighed Dr. LaGrand's opinion, but in his failure to include all of the limitations found by Dr. LaGrand without explaining why he rejected them, especially in light of his conclusion that her opinion was entitled to 'great weight.'"); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("We therefore agree that the ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others.") Because Dr. Suyeishi opined that Plaintiff "<u>must</u> have <u>minimal to no interaction</u> with the general public" (emphasis added), it is not clear that the RFC's "moderate" limitations account for this opinion because the ALJ failed to address the point.

Defendant argues the ALJ "reasonably indicated he did not fully adopt Dr. Suyeishi's opinion because only Dr. Farnsworth's opinion was based on a review of the

---

[33] In the Court's view, this limitation differs from the "frequent or prolonged" limitation regarding Plaintiff's contact with supervisors and coworkers. Dr. Suyeishi did not opine that Plaintiff was prohibited from "frequent or prolonged" contact with supervisors and coworkers, or even that she must avoid it; he opined that she "<u>can accept supervision and relate to coworkers if</u> contact is not frequent or prolonged." This differs from his more specific opinion regarding Plaintiff's interactions with the general public—he directly specified that Plaintiff "must have minimal to no" interaction with the general public.

whole record." [#17 at p.16.] Defendant concedes the ALJ's articulation of what he did with Dr. Suyeishi's and Dr. Farnsworth's respective opinions "could have been expressed more artfully." [*Id.* at 17.] But Defendant argues:

> it can nonetheless be discerned from the ALJ's decision as a whole that (1) he found both the opinions of both Dr. Suyeishi and Dr. Farnsworth opinions generally worthy of weight, but slightly favored Dr. Farnsworth's opinion because only she reviewed all the medical evidence; and, thus, (2) did not <u>fully</u> adopt the two opinions, but rather assessed a mental RFC that was consistent with the general thrust of both opinions, and most consistent with Dr. Farnsworth's opinion insofar as the ALJ found Plaintiff had an overall moderate limitation in interacting with others but could nonetheless adequately do unskilled or low semi-skilled work (see AR 19-20, 22).

[*Id.* (emphasis in original).]

These arguments are merely post-hoc rationalizations to support the Final Decision that are not apparent from the Final Decision itself. *Haga,* 482 F.3d at 1207–08; *Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004). The Court cannot engage in such revisionist history. *Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) (holding that district court's "post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process"). What <u>is</u> apparent from the Final Decision is the ALJ gave Dr. Suyeishi's opinion "great weight;" he "generally adopted such opinions for the residual functional capacity;" and he failed to explain his reasons for not incorporating Dr. Suyeishi's opinion of "minimal to no" interaction with the general public into the RFC or for favoring Dr. Farnworth's opinions over Dr. Suyeishi's opinions, if that is indeed what he did.

The case must be remanded for further explanation by the ALJ regarding what portions of Dr. Suyeishi's opinions he adopted or rejected, and if any portions were rejected, the reasons for rejecting them.

### 2. The ALJ's Reasons for Rejecting Dr. Nizami's Opinions

Plaintiff argues the ALJ did not have valid reasons for rejecting Dr. Nizami's opinion of mental limitations. Dr. Nizami was a treating source who provided a residual functional capacity mental evaluation. [AR at 320-23.] He opined, in relevant part, that Plaintiff was "at least marked" in her abilities to complete a normal workday and workweek without interruption from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number or length of rest periods. [*Id.*] He opined she was moderately limited in many portions of her understanding and memory and sustained concentration and pace. [*Id.*]

The ALJ noted that opinions of treating sources are to be afforded controlling weight, but he further observed that such opinions may be given little weight if they are not well supported. [AR at 23.] He then gave little weight to Dr. Nizami's opinion "as it is inconsistent with the overall record and Dr. Nizami's own treatment notes." [*Id.*] The ALJ identified the record evidence that he found inconsistent with Dr. Nizami's opinions: (1) the reporting and observations from the November 2016 treatment notes; (2) Dr. Nizami's "conservative, medication based treatment at that time;" (3) his treatment notes from March 2015 through February 2017; (4) a May 2015 report by Plaintiff; and (5) reported observations by other treatment providers during physical examinations. [AR at 23.]

Plaintiff argues the ALJ "did not have valid reasons for rejecting Dr. Nizami's opinions of mental limitations." She describes the ALJ's reasons for rejecting Dr. Nizami's opinions as follows: (1) "the cause of her anxiety was unknown and possibly related to the approach of the holidays;" (2) "one of his notes said she had a normal, smiling mood and she said she was stable;" (3) "his treatment was conservative and medicine based and medications were modified only occasionally;" (4) "the May 2015 note said she did not want to change her medications because they were working fairly well; and (5) "some physical exam notes from the Nurse Practitioners indicate normal mood and affect." [#16 at pp.15-17.] Plaintiff then takes each of these five "reasons" in turn to argue why each one is invalid. [*Id.*]

First, the Court is suspect of Plaintiff's approach. The ALJ expressly afforded Dr. Nizami's opinions little weight because he determined them to be "inconsistent with the overall record and Dr. Nizami's own treatment notes." [AR at 23.] Plaintiff's piecemeal approach to carve-out and attack each particular "reason" in isolation ignores the ALJ's determination that Dr. Nizami's opinions were "inconsistent with the overall record." *Cf.* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole the more weight we will give to that medical opinion."). Second, determining whether inconsistencies are material, whether they exist at all, and which factors are relevant to discounting a treating source's opinions is appropriately the role of the ALJ. *See generally* 20 C.F.R. § 1527(c); *see also Donna J. v. Comm'r of Soc. Sec.*, No. 3:18-CV-05296-TLF, 2019 WL 4200661, at *5 (W.D. Wash. Sept. 4, 2019), amended, No. 3:18-CV-05296-TLF, 2020 WL 949903 (W.D. Wash. Feb. 27, 2020). Third, Plaintiff's

arguments in support of her position that the ALJ did not have valid reasons for rejecting Dr. Nizami's opinions is little more than a request for this Court to reweigh the evidence, which it cannot do. *See Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Ultimately, the ALJ's explanation of the inconsistencies he determined exist between Dr. Nizami's opinions, his own treatment notes, and specific record evidence, is reasonable and supported by substantial evidence.

To be sure, the factors to consider in weighing opinions from medical sources include: (1) how long the source has known the individual; (2) how frequently the source has seen the individual; (3) how consistent the opinion is with other evidence; (4) the degree to which the source presents relevant evidence to support an opinion; (5) how well the source explains the opinion; (6) whether the source has a specialty or area of expertise related to the individual's impairment(s); and (7) any other factors that tend to support or refute the opinion. *Id. See also* 20 C.F.R. § 404.1527(c)(1) – (6). While the ALJ did not specifically walk through each factor, the Court sees no error.

The ALJ specified he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527." [AR at 20.] Moreover, he was not required to include an explicit discussion of each factor when determining the weight to afford medical opinions. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical

opinion."). And ultimately, the ALJ's analysis shows his consideration of the applicable factors.

For example, the ALJ correctly noted that "[w]ith regards to the opinion of Dr. Nizami, 20 CFR 404.1527(d) states that opinions of treating sources are to be afforded controlling weight." [AR at 23; *see also id.* at 20.] His specific reference (twice in the Decision) to § 404.1527 and acknowledgment of Dr. Nizami as a "treating source" indicates his consideration of Dr. Nizami's specialization in psychiatry, the examining relationship, the treatment relationship, and the length, nature, and extent of the same. [AR at 22-23.] 20 C.F.R. § 404.1527(c). His conclusion to accord Dr. Nizami's opinions little weight was further based on his considerations of supportability and consistency— he concluded his opinions were "inconsistent with the overall record and Dr. Nizami's own treatment notes." [AR at 23.] 20 C.F.R. § 404.1527(c)(4). In finding the latter, the ALJ offered specific reasons, supported by the record, for his findings of inconsistency. [AR at 22-23.]

Substantial evidence supports the ALJ's findings, and he adequately explained his reasons for weighing Dr. Nizami's opinions and affording them little weight. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2011) (affirming district court's decision on basis that the order "found that the ALJ articulated adequate reasons for disregarding [treating physician's] opinion"). Indeed, "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *See Watkins v. Barnhart*, 350 F.3d 1297,

1300 (10th Cir. 2003) (citing Social Security Ruling 96–2p, 1996 WL 374188, at *2 (Jul. 2, 1996).) The Court finds no error in the ALJ's analysis or treatment of Dr. Nizami's opinions. Substantial evidence in the record supports his conclusions.

### E.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED regarding the RFC's moderate limitations on supervisor and coworker contact and his assignment of little weight to Dr. Nizami's opinions. It is REVERSED and REMANDED for further proceedings consistent with this order—the ALJ must provide further explanation regarding what portions of Dr. Suyeishi's opinions the ALJ adopted or rejected, and if any portions were rejected, the reasons for rejection. Plaintiff is awarded her costs, to be taxed by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1) and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). *See Iqbal v. Holder*, 693 F.3d 1189, 1193-95 (10th Cir. 2012) (holding that a party qualifies for attorneys fees as "prevailing party" under the EAJA if the party receives a court order in its favor that "entitle[s] that party to some method of enforcing the merits of the claim").

DATED: March 31, 2020

BY THE COURT:

S. Kato Crews
United States Magistrate Judge